We will hear argument first this morning in Case 13-1314, the Arizona State Legislature v. the Arizona Independent Redistricting Comm'n. Mr. Clement. Mr. Chief Justice, and may it please the Court, Proposition 106 permanently divests the State Legislature of its authority to prescribe congressional districts and re-delegates that authority to an unelected and unaccountable commission. The Elections Clause of the Constitution clearly vests that authority not just in the States, but in the legislatures thereof. Thus, this avowed effort to re-delegate that authority to an unelected and unaccountable commission is plainly repugnant to the Constitution's vesting of that authority in the legislatures of the States. But it's all right for the State redistricting. The commission is no constitutional question, but the Arizona being able to use this commission for its State representation. Absolutely, Justice Ginsburg. It only applies to the congressional – our argument only applies to the congressional redistricting. And, of course, that means that if these commissions are as effective as my friends on the other side say, then we will have nonpartisan districts that will elect the State house – the State houses, the State representatives and the State Senate, and then those nonpartisanally gerrymandered, perfectly representative bodies will be the ones that take care of congressional districting. Mr. Clement, I just want to clarify your position. Are you suggesting that the lack of legislative control is at issue only, or are you saying that we have to overturn Hildebrandt and Smiley? Oh, you certainly don't have to overturn Hildebrandt and Smiley. We actually think that those decisions cut in our favor. Because what those decisions stand for is – Smiley in particular. I mean, the Court was emphatic that the legislature was a term of certain meaning at the Constitution, at the framing of the Constitution, that it means then what it means now, which is a representative body of the people. That's sort of hard to understand, because we made it very clear in Smiley and in Hildebrandt that we're defining legislature in this clause as meaning legislative process. With all due respect, I disagree. This Court heard the argument in the briefs in Smiley. And one side was saying just that. The one side was saying, oh, legislature just means the legislative process in the State, whatever that is. The other side said, no, it means the representative body of the people. And this Court said, well, actually, we don't have to decide that dispute, but we certainly agree that it means the representative body of the people, just as we said 5 years earlier in the Hawk case. So what the Court said is, first, the delegee is clearly the legislature, the representative body of the people. But that brings you then to the second question, which is what kind of authority is delegated to the State legislatures? And the authority that's granted under the Elections Clause is a lawmaking authority. So that means that the State legislature has to engage in lawmaking subject to the normal rules. Sotomayor But this makes no sense to me, because I think it's an either-or. If the legislature has the power, how can the governor veto it? How can a popular referendum veto it? Either they have the power or they don't. And if the State constitution says that the people hold the power and they can choose a commission or however else they want to do it, isn't that the legislative process? No, it's not. But, I mean, I disagree with you, Justice Sotomayor, but that's not particularly important. I actually think the Court in Smiley disagrees with that way of thinking about it. What they say is that the delegee remains the same. Here, as in Hawk, it is the State legislature, the representative body. They say the function differs. So when the State legislature is told that it can elect somebody or ratify something, then there's no partial agency of anybody else in that process. But when they're told to prescribe rules, the Court says that's a delegation of lawmaking authority. So of course you delegate the – of course the State legislature does its lawmaking pursuant to the ordinary rules. And if the ordinary rules provide for a gubernatorial veto, if they say that it has to spend 30 days in committee, then those rules apply to the lawmaking under the Elections Clause, just as they would to other lawmaking. But it's a completely different matter to say we're going to cut the State legislature out entirely and we are going to revisit the Framers' decision to delegate this important responsibility to the State legislatures, and we're going to re-delegate it to an entirely different body. And a body that has the one feature we know that a representative body doesn't have, which is this commission, is completely unelected and completely unaccountable to the people. Ginsburg. Could Congress do that? Could Congress substitute this commission for the State's legislature? I don't believe that Congress could say that at the State level we're going to re-delegate this authority from the State legislatures to the State commissions or to independent commissions. If Congress wants to do it itself on the Federal level and set up some sort of Federal commission, I think that would be a very different issue, because obviously Congress has power under the second subclause. But could Congress bless what Arizona has done by saying that's the manner in which Federal elections will be held? I don't think they could simply bless what Arizona has done, because I think that would amount to revisiting the judgment that the Framers made in the first subclause. I think that they could, if they wanted to, Congress could say we're going to actually take those commission districts and we're going to make them our own and we're going to impose them. But that would be different. So you're saying it has to be a Federal commission or a State commission, but if it's the latter, it can be only the legislature? I think that's right, though, of course, it could be an advisory commission. What we object to is not just the idea that there is a commission. What we object to is the permanent resting of authority from the State legislature. Suppose you had a law that said that the reapportioned commission has — must submit its proposal to the legislature, and the legislature has 30 days and can overturn it only by a three-quarters vote. I think, Justice Kennedy, that would be a harder case. And I think that this Court, however they decide this case, could decide that either way. Now, the question I think you would ask is, does that residual authority for the State legislature there amount to the authority to prescribe districts? And I think you could decide that either way. You could say, well, they're not cut out completely, they have the residual authority and three-fourths is tough, but maybe you can get it done. Or you could say, and I think this might be the better view in my view, but you could say, no, what you can do under Smiley and Hildebrandt is apply the ordinary rules for legislation to the State legislatures, but what you can't do is come up with some separate rules that apply only to congressional redistricting and make it much harder for the State legislature to act. Kennedy, Your phrase, completely cut out, probably answers the question, what about voter ID laws, what about absentee ballots and so forth, that are provisions enacted by referendum? Right. You would say those are okay because the legislature is not completely cut out? I would say probably so. I think it might depend on the details a little bit. I mean, if you have to go through the details. Kagan, Well, Mr. Clement, how about that? Because I thought that the legislature was completely cut out as to most of these things. I mean, you take the 2011 law in Mississippi adopting voter ID requirements, 2007, Oregon, voting by mail, 1962, Arkansas, use of voting machines, all of these things were done by referendum or by initiative, with the legislative process completely cut out, so would all of those be unconstitutional as well? And we can go further. I mean, there are zillions of these laws. Yes. And let me address those laws, Justice Kagan, and also be responsive to Justice Kennedy. I think there is, if you look at the various laws that are put in the appellee's appendix, not one of those State constitutional provisions purports to, on its face, re-delegate authority away from the State legislatures. And to the contrary, many of them, roughly half, I counted 27, actually delegate authority to the State legislatures to implement them. So if you want to look at the North Carolina provision on page 278. Well, they're not delegations or non-delegations. All they are is laws that are passed not through the legislative process. Exactly. Not through legislature. Exactly. And we don't think that's the defect here. No, but I mean, my gosh, I would think that if your primary argument is legislature means legislature, that there has to be legislative control. In none of these laws is there legislative control. There is no legislative participation at all. Justice Kagan, we distinguish two situations. We could be here saying, you know, the problem with Proposition 106 is that simply that it was done by an initiative and not by the legislature. But that's actually not our position. We would have the same objections here if this were imposed by a gubernatorial edict. And we know that the rule that should emerge from this case is not that nobody but the legislature can ever do anything with elections on a one-off basis. And the way we know that is this Court has already said that it's okay for a judicial body, like a State court, to do redistricting on a one-off basis. Well, how do you make that consistent with the text, the textual argument that you are making? The textual argument that you are making is legislature means legislature. There's no two ways around that. But now you're saying that there are these many, many, many laws throughout the United States in which the rules are not being made by a legislature, and that's perfectly okay because the legislature isn't involved at all. Two things, Justice Kagan. See, our position is not the problem here is that somebody else got into the legislature's lane and purported to do something about elections. Our problem is once they got in that lane, they decided to wrest the legislature from that process entirely on a permanent basis. Now, as to a more specific answer to your question, I would invoke this Court's case in McPherson v. Blacker, which dealt with an analogous clause in Article 2 that gives the State legislatures the authority to prescribe the rules for presidential electors. And what this Court said there, it took sort of a practical view of the matter, which is, look, if the State legislature sort of lets other parts of the State do something, we're not going to jump in. We can sort of think about those as delegation of authorities. But the words in each of the legislatures thereof mean something in the Constitution, and what they mean is it protects the legislature from other parts of the State coming in and permanently wresting that authority away. Kagan. Well, I thought that the — that generally in our separation of powers jurisprudence, abdication is just as consequential as aggrandizement. In other words, it doesn't matter what the legislature wants. The legislature sort of said, oh, that's fine, go do it, we don't care about it. If there's a problem, the problem continues to exist irrespective of whether the legislature protests or not. Well, that's not the way the Court approached this issue in McPherson, and I would suggest that it's the same way to approach it here, which is to say, I think the Court recognized in McPherson, and I would certainly say it's the right view, that nothing would prevent a State legislature from delegating its authority to one of these commissions. That's not the problem. The problem is that the law, either by an initiative or a gubernatorial edict, it would be the same, from without comes in and says, no, the framers thought it would be great for this to be in the State legislature. We disagree. We're going to give this power particularly to the State legislature. Kennedy, suppose the legislature proposed the initiative or the referendum? I don't think that would ultimately make a difference in my own view, but I think that would be a different case. Well, but that's a case in which the legislature has itself made the decision. Right. And so, I mean, that's not the situation we're dealing with here. I do think that if what they did is propose a referendum that then permanently wrested the authority so they couldn't get it back. Well, it's not completely remote because the legislature in Arizona, correct me if I'm wrong, can seek to overturn what the commission does by putting its own referendum before the voters saying, please, voters, change this proposal or change this districting plan and enact a different one. I suppose the legislature can do that. It has the power to submit a referendum or an initiative to the — I guess a referendum to the Arizona — to Arizona. I think they would have the power to do an initiative. I don't think they would have to do — the power to do a referendum. One of the ironies is that my friends on the other side like to talk about the power of the people, but the maps that the commission promulgates are not subject to override by referendum the way the maps of the legislature were before Proposition 106 passed. So I think all the legislature could do is what any citizen could do, which is to propose an alternative map by initiative process. But whatever that is, that's not the primary power to prescribe congressional districts or to make election regulations. That puts the State legislature on the same plane as the people. And don't these towns — So I understand you to say that it would be okay if the legislature itself established this commission? I would — I would take the position that that is okay because that is a delegation of authority. If you disagree with me, I mean, you know, you may disagree with me, but I think my position is consistent with what this Court said in the McPherson case about the authority of the State legislatures to prescribe rules for electors. They can delegate that to some commission and come up with it that way, but if they want to take the authority back, as they did in the — in the Michigan piece of legislation at issue in McPherson, you bet they can do that. And if the State tries to stop them from taking it back, that's a constitutional problem. So tell us, Mr. Clement, that there's — the State sets up this independent commission, and the independent commission has a veto power on the State's redistricting. In other words, the State can do redistricting and then it submits it to the independent commission, and the independent commission can say, no, go back, do it again. Well, if — I mean, I guess it depends a little bit on the details of how that works and whether — who's got the ultimate last say in the matter. They have the veto. That's — that's who has the veto, the independent commission. And is it a veto that can be overridden, or is it just a permanent veto? Does it matter? I think it does, or at least arguably does. At the end of the day, the way — I mean, let me say two things about that. One is, that would give the legislature an awful lot more authority than Arizona has allowed here. So it is a different case. The principle that would allow you to decide that case is to ask yourself the question of whether or not it allows the State legislature to prescribe the congressional districts. Now, you could — But kind of it doesn't, right, because there's a veto at the end of it. Kind of it does, which is why it's a hard case that you can wait for another day to decide. All right. I'll take out the kind of. It doesn't. There's a veto at the end of this. If you think it doesn't, then you should decide that case in favor of the State legislature. I think that's what — But that's what — so this is what we're going to have to do for every time that they set up some process in which there's some independent commission involvement. What we're going to have to ask is what, exactly? Whether or not it's consistent with the Constitution and what the Constitution says. No, that's just — I mean, tell me exactly how we're going to decide all these cases in which an advisory commission plays some role, but not just some role, a very, very serious role, but there's a little piece that's left to the legislature. I don't think it's going to be that hard, Justice Kagan. And let's look at the commissions that exist in the real world, okay? You have some that are purely advisory. Now, nothing in our theory suggests that they are constitutionally problematic. You have others that are what are called backup commissions, which is they don't have a veto, but if the legislature, because there's a stalemate, one house is the Democrats, one house is the Republicans, they just can't get it done, then a backup commission comes in. I don't think that's problematic. But what if the commission says, we're going to give you two maps, the legislature has to pick one and only one? I would think that that's probably unconstitutional, but I don't think that — I mean, you know, obviously, if — But why is that unconstitutional and an impasse in the legislature, and leaving it then to a third party who's not the legislature, why is that constitutional? That's what you just said. That's constitutional. And the reason I say that is because if the legislature has the primary authority and they can't get it done, then we know as a matter of fact that somebody else is going to provide that rule. Now, if they don't provide — if the legislature gets stalemate, what happens in the real world, of course, is you can't use the existing maps because they violate one-person, one-vote principles, and so the State courts come in. Now, if a — So that bypasses to a seal together. Well, sure, because everybody, I think, wants to bypass 2AC because everybody knows that at the end of that rainbow is an unconstitutional Federal default rule that violates one-person, one-vote principles. Could I ask a simple question? I know you're going to say it's a constitutional requirement, but if I read Hillebrand and Smiley differently, and I think there's plenty of language in there to suggest so, but if I read it differently to say that what the election clause means is the legislative process, isn't that just simple? We never have to worry about how the States experiment, what they do in their own self-governance. Why is that the Federal interest? Well, the Federal interest is because the Framers thought long and hard about this issue, and they decided to do it. No, they didn't, actually. When you look at the legislative history on this, the Federalist papers, not a whole lot on this particular clause. Well, there actually is a tremendous amount on this particular clause. If you're making the point that there's less about the first subclause than the second subclause, I suppose I would grant you that. But part of the reason there was less discussion of the first subclause is it seemed so remarkably obvious to the Framers that if this was going to be done at the State level by anyone, of course it would be done by the representative body of the people. And it's not like they didn't know about popular lawmaking. It's not like they didn't have the conception of what a referendum would be or an initiative would be. They simply said, we like representative government, because that way if they've been at the State level. I thought, Mr. Clement, I thought that the initiative in referendum came in later, that at the time of the founding, and the initiative in the referendum weren't used by State legislatures. They weren't. The initiative in the referendum is we came to know them in the early 20th century, late 19th century, were not in use at the time of the framing. But direct democracy was. I mean, the Framers themselves said there ought to be conventions to approve the Constitution, not they shouldn't be approved just by votes of the State legislature. The Framers, when they formulated Article V and had alternative mechanisms that the Federal Congress could choose to provide for ratification, they gave the choice of State legislatures or the people in convention. So the Congress — the Framers understood the difference between direct democracy and representative democracy, and they made a conscious choice. And indeed, it's really hard to argue that the Framers didn't know the difference between the people and the State legislatures in the context of Federal elections, because there they are creating a House elected by the people and a Senate appointed by the State legislatures, and when they get to the voter qualification clause, they say, well, the people are going to vote for the Congress, and how do we define the people that get to vote for the Congress? They're the same people that get to vote for the most numerous body in the State House. So at various points, the Framers obviously demonstrated the difference. Kagan. Kagan. But you see, Mr. Clement, that suggests a very pure rule, and on occasion, you've said something like this, a legislature means a legislature, and that's what it means. And so a legislature has to do all those things. But you've made many, many exceptions to that over the course of the last 20 minutes. You've said that as to anything that's not redistricting, it can be done by referendum or initiative without any legislative process whatsoever. You've said that all these kinds of different schemes about the interaction between a legislature and an advisory commission are all going to have to be reviewed on a case-by-case basis to determine whether the legislature has primary control. And when you get through with all that, the sort of purity of the originalist argument that a legislature means a legislature, well, we are miles away from that, aren't we? Clement. I don't agree with that, Justice Kagan. I think what I am doing is essentially channeling this Court's decision in Smiley, which said, of course, the delegee is the State legislature. Now, when the State legislature gets to do something, then the questions of whether the constraints that are put on the State legislature actually drawing these lines, those — there may be some hard questions about that. But there's no hard question here. This isn't any of your hypotheticals. If the election clause means anything, it means that you can't completely cut out of the process the State legislature entirely on a permanent basis. Suppose that a legislative districtly plan is challenged either under the one-person, one-vote rule or under the Voting Rights Act, and it goes to a State or a Federal court, and it goes a year before the election. Does the State court have an obligation under the Constitution to simply pass on the validity or invalidity of the plan, and if it doesn't pass, send it back to the legislature, or can it do its own if an election is approaching? As I read these — this Court's cases, Justice Kennedy, what they say is that the Court in that instance, first of all, there should be a preference for the State courts over the Federal courts. And then the State court favors the legislative process, so what they do is, if there's enough time for the legislature to go back and draw a new map, they give the State an obligation. Kennedy, and you think that's constitutionally required? I do think ultimately it's constitutionally required. It's certainly — if it's not constitutionally required, it's certainly prudent. And what — and the reason that it's prudent flows from the recognition of this Court time and time again that redistricting is primarily a process of passing. We're talking about what's required. So if we will, in your favor, we're going to have to tell every court that's involved in a redistricting litigation that it has to submit it to the legislature. Even if the Court made its own plan for one election, I think it would have to submit it to the legislature — back to the legislature for the next 8 years under a reportionment scheme. I think for the most part that's what this Court has already said. I mean, White v. Weiser says that in the initial challenge phase, that if there's time, you let the legislature do it. Now, this Court has also said, or certainly has said that you need a redistricting plan approved by a court, has to have a fixed deadline. Of course, the legislature can, I assume, pass a conforming plan, but the court's plan stays in place until it does. And it seems to me that that's as much of a displacement as what you're talking about here. Not as much, but it is a displacement. It is a displacement. It's not as much. I may have been confusing things. I'm talking about there's two different circumstances, right? One is when the redistricting plan is challenged very early and there's still time for the legislature essentially to take a second crack at a constitutionally compliant plan. And I read White v. Weiser to say that if there is that kind of time, then you allow the State legislature to do it, because it's their primary task. Then the second question is, there's not time, and then there is a judicial plan, and let's say the first cycle of elections takes place under the judicial plan. Now, I actually read this Court's cases as generally suggesting even then there's nothing that prevents the State legislature, certainly, from going in and redistricting. And this Court in the Perry case, for example, rejected the idea that it's like you get one shot at this and then you're done for the whole decennial census. Now, there's at least one State, Colorado, that's basically said that if you get into that situation, then you've got to live with the judicial plan until the next census. But then the legislature still kicks in and has the primary role. Now, I'm inclined to think that what Colorado has done is inconsistent with the Elections Clause, but however you decide that issue, you can decide it either way, your position in accepting our argument here does not foreordain the answer to that question. And that's why I'm very happy to address the hypotheticals, but I do think it's worth remembering that this is about the most extreme case that you're going to have. So if the Election Clause means anything at all in terms of its delegation of this State legislatures, maybe we can talk about taking part of it away, but they can't take the entire thing away on a permanent basis and give it to a commission that's defining feature is that it's not representative, if I may reserve the balance of my time. Roberts. Thank you, counsel. Mr. Feigin. Thank you, Mr. Chief Justice, and may it please the Court. I'd like to make one main point on standing before I turn to a couple of points on the statutory Section 2AC issue. On standing, this is an extremely unusual and unprecedented Federal lawsuit in which a State legislature is asking a Federal court for assurance that if it passed a certain kind of law, which it hasn't even alleged that it's going to pass, the law would be enforced by a defendant State official who hasn't even denied that she would enforce it. We don't normally conceive of legislatures as having an interest, let alone an interest cognizable under Article III in the enforcement of laws they might pass. And there's nothing in the Arizona Constitution or the decision of the Arizona courts interpreting that Constitution. Sotomayor, isn't this a diminution of the power to legislate, not of a particular plan or of a particular law and plan? This is the removal of power from the legislature. No, it isn't, Your Honor, because I don't think there's anything that actually as a practical matter prevents the legislature from passing a bill that would redistrict the State, which they believe in good faith that they can do under their view of the elections clause. There are numerous cases, some of which are cited in our brief at page 13, in which the Arizona legislature has passed laws that conflict with a popular initiative or conflict with the Arizona Constitution. And the Arizona courts do treat them as laws, and the consequence of their passage is — and their unconstitutionality or their conflict with the initiative is simply that they are not enforceable and their enforcement is enjoined. So you want the legislature to pass a law that's not enforceable? Well — And suggest they don't have standing to challenge what the referendum has done in this case until they go through that process? Well, Your Honor, I do think, just as in Lujan, the plaintiff had to allege that — Which Lujan? Lujan v. Defenders of Wildlife, the second one. The plaintiff had to allege that they were going to buy a plane ticket to go see the The legislature here should allege that it's going to do everything in its power to bring this to a head. But let me put to one side that they haven't — Don't they just have to, under that theory, just allege that they plan to exercise what had up to this point been their normal authority to engage in the redistricting? Well, Your Honor — To suspect the fact that they're litigating it implies that they have some interest in doing that. Well, I think that could be said of almost any litigation, and it may be difficult for them to actually coalesce on some particular redistricting plan, but I don't think there's a reason to excuse them from the normal standing requirements. But if I could just put their — the absence of an allegation that they'd pass a law to one side for a second, let's assume they had passed their own legislative redistricting plan, presented it to the Secretary of State, and the Secretary of State had said, no, I'm going with the commission's plan because that's what State law requires me to do. I still don't think that they would have standing here because, again, legislatures don't have an interest in the enforcement of the laws that they pass. It's a general matter. They have an interest in the constitutional powers they have. Well, Your Honor, let me give you an example that I think is fairly analogous to this case and really crystallizes the point. Let's suppose that Congress passed a law that preempted State regulation in some area, and let's further suppose there were a colorable constitutional challenge to that law. Now, I don't think anyone would believe that the State legislature, acting in its own name, would be the proper party to bring that constitutional challenge on the theory that its police powers had been infringed by the preemptive Federal statute. And although this case arises under the Elections Clause, the Elections Clause doesn't give the State any more lawmaking power than it would ordinarily have. It doesn't give it an interest in law enforcement. Ginsburg. Are you saying that nobody would have standing, because it seems the legislature, if anyone has standing, they are, as an institution, affected? I think there may be people who are much more directly affected, such as people who might be put into one district versus another. If someone were to bring a Voting Rights Act challenge and had enough of an injury to bring that claim, they could actually be affected. Is it part of our jurisprudence that if it's likely that another person is more directly affected, that that goes into the balance and we say, well, the legislature doesn't have standing because there are other people out there that are more directly affected? Do we say that in our case? No, Your Honor. And I think, in fact, you say quite the opposite, which is that even if it would mean no one would have standing to sue, that's not a reason to find standing. And we think the legislature simply doesn't have standing to sue here, regardless of whether anyone else does. But if the Court were to reach the merits, I want to make a couple of points on the statutory section 2AC issue. And the first is, I think the statutory issue in this case is relatively easy, because the Court decided all the relevant issues in Ohio v. Hildebrandt in construing the nearly word-for-word identical language of the 1911 Act. But I don't understand how 2AC even applies. It's meant to apply when the State has not, under its law, redistricted. Here, there's no doubt the State has redistricted under its law. The question is whether the law is valid. Well, Mr. Your Honor, I'd like to turn back to Hildebrandt in a second, but just to take your question on, I think the operation of the prefatory clause here is best understood in context. A neighboring Federal statute, 2 U.S.C. 2C, requires that as a matter of Federal statutory law, States be divided into districts for the purpose of electing congressional representatives. That makes it a question of Federal statutory law how that districting requirement is met and whether it is met. And that's the question that section 2AC answers. Section 2AC says one of these default procedures that we've prescribed is going to apply until a State is redistricted in the manner provided by the law thereof. I think the necessary and logical corollary of that is that once the State is redistricted in the manner provided by the law thereof, those are the districts that are going to be used. It's hard to believe Congress would have expected anything different. And in fact, given that they were legislating in light of Hildebrandt, that is exactly what they would have expected. Hildebrandt, in construing the nearly identical language of the 1911 Act, said first of all that the statutory language had the express purpose to provide the direct democracy procedures. Alito, I have the same thought as the Chief Justice. It would be one thing if Congress passed a law that said a State may apportion congressional districts in any manner consistent with the law of the State. But that's not what this statute says. Now, this statute may have been enacted on the assumption that that would be constitutional, but it is not the exercise of congressional authority implementing that. It's just an assumption on which a statute that's otherwise completely irrelevant to this case may have been enacted. Well, Your Honor, I do think it's quite important that Congress was legislating against the backdrop of Hildebrandt. Hildebrandt, interpreting the same statutory language, effectively the same, in the 1911 Act, found that it had the express purpose to provide that direct democracy procedures could be used in redistricting. That Congress was exercising its power to effectuate that result insofar as it had the power to do it, and then went on to say that Congress did have the power to do it. Sotomayor, I guess the bottom line question is, let's assume 2A.C. said something totally different, which is, we remove redistricting from the legislature and we require every State to pass it by redistricting by referendum. That would – is your position that Congress has the power to override the Constitution? Well, Your Honor, I don't think that would exactly be overriding the Constitution. If there were such a law, we might defend it, but I don't think we need to go that far in this case for two important reasons. First, Congress here isn't trying to force upon States some process that the State doesn't want. Congress is simply trying to recognize that the Federal statutory requirement of districting is satisfied when a State redistricts in the manner that it's decided to redistrict under its own procedures. I would think that the power of Congress should be at its apex when both Congress and the State want to do the same thing. The second thing I would say is that in this circumstance, it's not Congress No, no, no. Not if the same thing violates the Constitution. I mean, just because Congress agrees with a State that they can do it, does that make it constitutional? The objection here is a constitutional objection. Well, Your Honor, I do think this is within the authority of Congress. And let me come at it a slightly different way, which is my friend just said that if the State legislature wanted to, the State legislature could have given this power to the commission. Now, under the second subclause of the Elections Clause, Congress can do anything that a State legislature can do, which means Congress could also give this power to the commission. The only difference between my friend's scenario and mine is that in my friend's scenario, the State legislature would retain the authority to override what the commission had done, but that's always a consequence of congressional legislation versus State legislation. When Congress passes a law of the sort that it's allowed to pass under the second subclause of the Elections Clause, it's not something that a State legislature can override, and it's simply a consequence of Congress's superseding authority and congruent authority under the second subclause of the Elections Clause. I also think that the Constitution of the question is Scalia, and the second clause be used to revise the first clause. That's what we're talking about here. The second clause can certainly — Congress can do something on its own, but can Congress use the second clause to revise what the first clause says? Well, I guess, Your Honor, one thing I would want to emphasize is that I do think the Court settled this issue in Hildebrandt when it said that the predecessor to section 2AC was simply doing something that the Constitution expressly gave the right to do. And I don't think the right way to think about this is to think about Congress using the second subclause to rewrite the first subclause. Congress here is using the second subclause to do something that a State legislature could otherwise have done, as my friend acknowledges. Thank you. Roberts. Thank you, counsel. Mr. Waxman. Mr. Chief Justice, and may it please the Court. The gravamen of appellant suit that the people, quote, usurped a power of a legislative body that they created both raises a claim that the framers would have been astonished to consider that Federal district courts have jurisdiction to adjudicate, and more fundamentally, is simply misconceived. Arizona defines its legislature in its Constitution to include both the people and two representative bodies. An appellant's argument hinges on the premise that in drafting the elections clause, the framers intended to ignore a State's definition of its own legislature. It is deeply inconsistent. Scalia, the Federal Constitution, by using the word legislature in connection with its the uniform accepted definition of that term in the founding generation.  It was understood that legislature meant the body that makes the laws. Give me one provision of the Constitution that uses the term legislature that clearly was not meant to apply to the body that of representatives of the people that makes the laws. There is no provision. Scalia, all I want is one provision of the Constitution that clearly has your meaning. I looked through them all. I can't find a single one. Well, the one that most clearly has our meaning, which accords with understanding, is the one that this Court has said in Hildebrand and in Smiley and this one. This is the only one. This may or may not be the only one. It may very well be. It's not for until 1913, for close to 100 years, many States wanted to have direct election of the Senators, and they had all sorts of proposals. They had primaries, and not one State, not one State displaced the legislature. It took the 17th Amendment to do that. That's correct. And it seems to me that that history works very much against you, because the term legislature, not in the Constitution, now taken out by the 17th Amendment, the Senators should be chosen by the legislature thereof. And there was no suggestion that this could be displaced. So, Your Honor, Justice Kennedy, there is no question, as this Court has explained repeatedly, first in Smith v. Hawk, which distinguished Hildebrand and the legislative power that is addressed in Article Section 1 from the election of Senators in Article 1, Section 3, and again in Smiley, that made clear that the meaning, as this Court reiterated just last week in Yates, that the meaning of a term in an enactment may differ depending on the function that the term is serving. Well, now you're going to the statute. But just under the Constitution, you're saying that legislature in the first article of Section 3, the now-repealed section that talks about choosing Senators, means something different than what it means in the following section, in the same article. And as this Court explained in Smith v. Hawk, which was decided, which was an Article 5 question of the meaning of the word legislature for purposes of ratification, in Smith v. Hawk, this Court said that in the Article 1, Section 3 election of Senators by the legislature, and in Article 5, the ratification power, what was at issue with the legislature was a power that is the power to elect and the power to ratify that's specifically comported with the elected representative body. And it used those as examples, the Court said, where often, Justice Kennedy, often the term legislature in the Constitution has that meaning. But it then, Smith then goes on and distinguishes Hildebrand on precisely the ground that we are urging, that what was at issue in Hildebrand under the Elections Clause is not a particular body, a brick-and-mortar legislature necessarily, it is the legislative power of the State. And in fact, in fact, Hildebrand is very helpful to you. But to get back to Justice Scalia's question, is there any other provision where legislature means anything other than the conventional meaning? How about applying for a constitutional convention, calling on the President to send in troops to suppress domestic violence, creating a new State out of part of the State of Arizona, for example? Those, all those provisions use the term legislature. Does it mean anything other than the conventional meaning of legislature? I don't know the answer to that question. It might. Do you think it might? Well, this Court has never said that it doesn't. It's never said that it does. It has focused a lot of attention on three particular uses of the word legislature in the Constitution, the Article V ratification power, the former Article I, Section III power to elect Senators in the legislative body, and the Article I, Section IV power to make the laws in the provision that's at issue here. And I think it's particularly important. I want to get to the language of Smiley, which my friend embraces. Breyer, I'd like you to, because as I read those two cases, they don't help you very much. I mean, Hildebrand is talking about a particular statute that was passed in 1911, and it helps the government with its statutory argument, because a different statute uses similar words, but we don't know if it was with the same intent. Smiley talks about a sitting legislature and asks whether its exercise of map-drawing power is a legislative exercise or, say, more like an impeachment exercise. It doesn't talk about what's at issue here, where you have people outside that building making the judicial — making a legislative decision. So I didn't see those two cases as helping you that much, though please argue to the contrary, but I think the great open question here is what happens when legislative power over time expands from a group of people sitting in the State's capital to those people plus a referendum. And there, I don't find much help in the cases one way or the other. Well, Justice Breyer, I think that both — that Hildebrand, Smiley, Hawke, and also this Court's — a case that this Court decided a few months after Smiley and that was block-quoted in the Court's opinion last week in Yates, the Atlantic Cleaners and Dyers case, all strongly support the reading of the word — the meaning of the word legislature that we advocate and that was, in fact, the consensus definition of legislature. And I agree with you that I'm — The consensus definition, although you cannot give us a single instance in the Constitution in which it is clearly used, in which the consensus definition is clearly used. I don't think it was a consensus definition at all. You plucked that out of — out of a couple of dictionaries. Justice — It was referring to a — Well, the dictionaries, I take it, are your support. They say how the word is used, and NOAA defines the dictionary definition of legislature as the power — we don't use that word power in the sense much anymore, but the power that legislates. The power that legislates in Arizona is the people in the Capitol plus the referendums. I will address the cases, Justice Breyer. Let me, if I may, just first respond to Justice Scalia's assertion. One thing is for sure. If there were any other Constitution — if there were any other dictionary that had a different principle meaning, we would have seen it in the briefing in this case. But you only have to look at the Framers' own use of the term, if I may. Charles Pinckney, for example — these are collected at pages 39 and 40 of our brief. Charles Pinckney, for example, who was — who wanted to do away with the second part of the clause that gave Congress any power because he thought it was an impairment on the State's rights, said, quote, that America is a republic where the people at large, either collectively or by representation, form the legislature. Madison made clear in discussing the Constitution that when he referred to, quote, the legislatures of the States, he meant the existing authorities in the States that comprise the legislative branch of government. James Wilson repeatedly interspersed legislature, States, and the people acting by dimensional slots. Scalia. Okay. Let's say — let's say that legislature means the body we normally can think of as the legislature. However, at the time, there was no such thing as the referendum or the initiative. So when the dictionaries referred to the power — the power that makes laws, it was always the legislature. It was never the people at large because there was no such thing as — as the referendum. Now that there is such a thing as a referendum, what about saying, okay, legislature means what everybody knows a legislature is, plus the full citizenry, which is a level higher of democracy. But what we have here is not a level higher of democracy. It's — it's giving this power to an unelected body of five people that, you know, that — could be elected by the majority party, two elected by the minority party. So that body, as it's — as it's constituted here, two of them are elected or selected by the majority party, two selected by the minority party. What if — what if Arizona decided all four would be selected by the majority party? Is that okay? Waxman, any delegation question. The issue in this case is what does the word legislature mean? My friend concedes that whatever the legislature is, it can delegate its authority. So the delegation questions — I mean, I'll endorse whatever I believe my friend would say, because the Arizona legislature has delegated all manner of time, place and manner regulations to a single person, both the Secretary of State, an executive officer, and the — the individual counties that set the precinct places, the places where you can vote, where you can register, et cetera. So delegation I don't think is in this case. The question is, what is the legislature? And if your question is, well, you know, now we know that there's something called an initiative. Of course, that we knew this, you know, 120 years ago when the first States first adopted — started reserving in their constitutions legislative power to the people by initiative. But just to echo something that Justice Kagan adverted to in the earlier argument, there are any — we're talking here about a construction of the word legislature as to all time, place or manner regulations. And there are any — Roberts Why doesn't your interpretation make the words by the legislature thereof entirely superfluous? In other words, why didn't they just say that the rules would be prescribed by each State? Because any way — I'm sorry? Because as the Court explained in Smiley, what the Framers wanted was it to be done by a legislation. That is, it wanted a, quote, ''complete code'' of holding congressional elections to be enacted. Roberts But I would have thought — I understood your argument to be that as long as it's an exercise of legislative power, that it's satisfied. And if you have, for example, a governor doing it, it presumably would be pursuant to a delegation either from the people or from the legislature. But either way, nothing happens until there's an exercise of lawmaking power by the State. So it should have been sufficient for the drafters of the Constitution to simply say it should be prescribed by each State, whether they do it by a referendum, whether they do it by initiative, whether they do it by what is commonly understood to be the legislature, whether they do it by committee, whatever. It's up to the State. And then saying by the legislature seems, as I said, totally superfluous. Waxman It is up to the power in each State that makes the laws. And as to Justice Scalia's hypothetical about, you know, could they just delegate it to the chair of the State Democratic Party or just let one party choose, as Justice Kennedy's separate opinion in Vieth and I think Cook v. Grelick, he points out, there might be other constitutional problems with that arising either from the First Amendment or the Fourteenth Amendment. But the — I think that — I believe that if Mr. Clement would agree on rebuttal, that if the legislature, whatever the legislature means, if the legislature decided, look, we are going to delegate this responsibility to the governor, that would be a constitutional delegation because it would have been a decision made by the lawmaking body of the State. If I could just make one point and then address Justice Breyer's question about Smiley, Hildebrand, and Hawk, it would be deeply, deeply inconsistent with the enterprise in Philadelphia to harbor the — to effectuate the notion that our Framers intended to set aside both a cornerstone principle of federalism and their aim to bind the people as closely as possible to the National House of Representatives. Yes, it is true that all of the sturm und drang over this clause related to the second part, giving Congress authority. And that is because no one questioned the fundamental principles that the sovereign States could choose to allocate their legislative power as they wanted. If there had been any suggestion, the anti-Federalists would have been screaming bloody murder that the States could not do so. Now, Smiley specifically said that, at quote, and I'm quoting from page 367, as the authority is conferred for the purpose of making laws for the State, it follows in the absence of an indication of a contrary intent that the exercise of the authority must be in accordance with the method the State has chosen, has prescribed for legislative enactments. We find that the legislature in both Smiley and Hildebrandt remain the prime mover. And what he has objected to is taking the legislature out of the picture entirely. Yes, Justice Ginsburg. We concede that in neither case was the initiative power at issue. But that distinction was never made by the Court either in Hildebrandt or Smiley. And in fact, Smiley says, we find no suggestion in the Federal constitutional provision of an attempt to endow the legislature of a State with power to enact laws in any manner other than which in which the Constitution of the State. Breyer, it's not that I'm not — I'm just quibbling in a sense about the case. But the question in the case is not about, they say, the body. I mean, what's the body? Everybody agreed it was the legislature. But when the legislature acts in this instance, is it acting as an electoral body, is it acting as a ratifying body, is it acting as a consenting body, as with the acquisition of lands, or is it acting as a legislating body? And then they get it correct, and that's the answer they get. This is a form of legislation. Here, the question is about the body. That's right. The question is, is — are the people by initiative a legislative body? Are they the legislature as they themselves have chosen? And in Smiley, again, discussing Hildebrandt, this is what the Court said. And it was because of the authority of the State to determine what should constitute its legislative process that the validity of the requirement of the State constitution in its application to congressional elections was sustained. And again — Scalia, legislative process there means the process in the legislature, what it takes for the legislature to enact a law. Once you assume legislative refers to legislature, your whole argument for Smiley just disappears. The State of Arizona, like the States of a near majority of — the constitutions of the States of a near majority, have defined the legislative power to include the people by initiative. And again, you know, in Atlantic Cleaners and Dyers, which was decided a month after Smiley and which this Court quoted last week in Yates, it said that it is not unusual for the same word to be used with different meanings and thus, and I'm quoting, and thus, for example, the meaning of the word legislature used several times in the Federal Constitution differs according to the connection in which it is employed, depending upon the character of the function which that body in each instance is called upon to exercise citing Smiley. But you said the court in Yates, it was a plurality? Was it or am I — am I wrong? Yates doesn't itself, just to be clear, Yates doesn't talk about this. It was the decision in Yates I thought of. My point only is that this Supreme Court, in the months following Smiley, again interpreted Smiley in the — I was not quoting from Yates, I'm quoting from Atlantic Cleaners and Dyers itself citing Smiley. Thank you. Thank you, counsel. Mr. Clement, you have 5 minutes left. Thank you, Mr. Chief Justice, and may it please the Court, let me start with the definition of legislature. Obviously, we can point to our favorite quotes from the Framers. They're at 27 and 34 and 35 of the blue brief. The critical thing, though, is not what the Framers meant by the legislature when they were talking broadly about political theory or the Swiss canton of ZUG. What matters is when they were talking about assigning particular authorities in the Constitution to particular components of the State government. And in that context, as a number of you have pointed out, there is no doubt every time they assigned an authority to the State legislature, they were assigning the authority to the representative body of the people. Now, that takes us to the Smiley case. And if the definition of legislature in the Smiley case is what this case turns on, then with all due respects to my friends on the other side, we win. Because Smiley specifically talked, as Justice Breyer alluded to, the body question. And then it defined the body. And what it said is, quote, I'm quoting from Smiley, not Yates or anything else. I'm quoting from Smiley. The term was not one of uncertain meaning when incorporated into the Constitution. What it meant when adopted, it still means for purposes of interpretation. A legislature was then the representative body which made the laws of the people. Breyer. That's true, but I see Smiley doesn't help him, I don't think, but I think it helps you still less, because that was the question in the case. Everybody assumed, nobody denied that it's those people in the bricks over there that are making this law, but the question is, are they legislating when they are doing it? So they were undeniable, nobody denied they were the legislative power. Here we have a different question. And that is, is this the legislative power when you proceed by referendum? And the reason I say Smiley might help is simply because it says be a little flexible about that. I think it says a little bit flexible about the lawmaking authority of the State legislature. So don't think you've been given some new key that allows you to make laws without the process of the governor being involved at all. I do think Smiley's very helpful because not only does it answer the body question, but the parties disputed this. And the other side in Smiley said, oh, we win this case because legislature means the lawmaking authority. And the other side said, no, it means the body. And this Court said, you're right, it means the body, but critically it's a lawmaking function, therefore it's subject to the gubernatorial veto. I think they would have been flabbergasted to find out that the legislature, which they just defined as the representative body of the people, could be cut out entirely. Let me tell you what I think, Mr. Clement, that the overriding principle of Smiley and Hildebrandt and Hawke is that when it comes to this particular provision, and this particular provision as compared to the 17th Amendment, which is the comparison and the contrast that Hawke sets up, when it comes to this particular provision, we need to show a lot of respect to the State's own decisions about how legislative power ought to be exercised. And that seems to me the overriding principle of the three cases. Clement, I think what you have to show is respect for the way that the State says the State legislature can go about lawmaking, but it is completely different to say it's okay to cut the State legislature out of the process entirely. Let me avert very briefly to the 1911 Act, which, of course, has since repealed. I think the questions show that the actual statute that's now in the books has nothing to do with this case. But the irony of my friends on the other side relying on the legislation of the legislative history of the 1911 Act is the whole point of the legislative history in 1911 is people in 1911 could read the statute on the books then said you're going to have the Federal default rule kick in until the State legislature redistricts. They realized in 1911 that the State legislature meant the State legislature, so they better change that law if they wanted to allow the referendum process. So the 1911 legislative history, not that I think you should particularly spend a lot of time with it, but it actually cuts against them on the constitutional issue. It shows that there is a fundamental difference between the legislature and the people. And as the Chief Justice pointed out, if there weren't, then the Framers could have stopped the election clause at in each State. They wouldn't have had to say by the legislatures thereof. Now, of course, the other side of the line is that you can turn that around and say what that provision shows is really exactly what I just said, is that Congress was also on board with this idea that the Court had, that when you look at that clause, the elections clause, that a lot of respect, a lot of deference has to be given to the State's own definition. And just if I may respond, Justice Kagan, I'm happy with giving deference to what the State legislature does. And if that's constrained in the State by the rule that you have a gubernatorial veto, override by referendum, something has to sit in committee for 30 days, then the restrictions on the State legislature are fine, that it has to be the State legislature. Thank you. Roberts.